WILLIAM K. LAVERTY, Respondent, *v.* WORTHINGTON G. SNETHEN, Appellant.

If an agent, intrusted with the property of his principal, parts with it in a way or for a purpose not authorized, he is liable for a conversion, although there was no wrongful intent on his part.

Plaintiff indorsed and delivered a promissory note belonging to him to defendant, the latter giving a receipt therefor, stating that it was received for negotiation, and that it was to be returned the next day, or the avails thereof. Plaintiff instructed defendant not to let the note go out of his reach without receiving the money. Defendant delivered the note to F., under the promise, by the latter, that he would get it discounted, and return the money. F. took the note away, and procured it to be discounted, but appropriated the avails. In an action for the conversion of the note, *held*, that the act of defendant in permitting the note to go out of his possession was an unlawful interference therewith, and constituted a conversion.

*Dufresne* v. *Hutchinson* (3 Taunt., 117); *Sarjeant* v. *Blunt* (16 J. R., 73); *Palmer* v. *Jarmain* (2 M. & W., 282); *Cairnes* v. *Bleecker* (12 J. R., 300), distinguished.

It *seems* that parol evidence of the instructions given to defendant not to part with the note was competent.

(Argued February 13, 1877 ; decided February 20, 1877.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New

York, affirming a judgment ·of the General Term of the Marine Court of the city of New York, which affirmed a judgment in favor of defendant, entered upon a verdict.

This action was for the alleged conversion of. a promissory note, the property of plaintiff, made by one Holly, payable to plaintiff's order.

The facts appear sufficiently in the opinion.

*James C. Carter* for the appellant.   Defendant's act in parting with the note did not amount to a conversion. (*Dufresne* v. *Hutchinson,* 3 Taunt., 117 ; *Moore* v. *McKibber,* 33 Barb., 246 ; Add. on Torts [D. & B. ed.], 404 ; *Sherneld* v. *Holden,* 4 B. & C., 5 ; *Palmer* v. *Jarman,* 2 M. & W., 282 ; *Sergeant* v. *Blunt,* 16 J. R., 73 ; *McMorris* v. *Simpson,* 21 Wend., 610 ; *Cairnes* v. *Bleecker,* 12 J. R., 300 ; *Canfield* v. *Murger,* id., 347.)

*Samuel Hand* and *Patterson & Major* for the respondent. Defendant was liable for a conversion. (*Spencer* v. *Blackman,* 9 Wend., 167 ; *Scott* v. *Rogers,* 31 N. Y., 676 ; *Beach* v. *R. R. Co.,* 37 id., 487 ; *Murray* v. *Burling,* 10 J. R., 75 ; *Schroepel* v. *Corning,* 5 Den., 240 ;. *Covel* v. *Hill,* 6 N. Y., 382 ; *Fouldes* v. *Willoughby,* 8 M. & W., 540 ; *Pease* v. *Smith,* 61 N. Y., 481 ; *Collins* v. *Bennett,* 46 id., 491 ; *Boyce* v. *Brockway,* 31 id., 493 ; *Cobb* v. *Dows,* 10 id., 338 ; 2 Hill, on Torts, 100 ; *Pease* v. *Smith,* 61 N. Y., 477 ; *Magee* v. *Badger,* 34 id., 246 ; *F. and C. Nat. Bk.* v. *Noxon,* 45 id., 765 ; *Bk. of Rome* v. *Vil. of Rome,* 19 id., 20 ; *Birdsall* v. *Russell,* 29 id., 220 ; *Develin* v. *Coleman,* 50 id., 531 ; *Decker* v. *Matthews,* 12 id., 313.)

CHURCH, Ch. J.   The defendant received a promissory note from the plaintiff made by a third person and indorsed by the plaintiff, and gave a receipt therefor, stating that it was received for negotiation, and the note to be returned the next day or the avails thereof.   The plaintiff testified in substance that he told the defendant not to let the note go out of his reach without

receiving the money. The defendant, after negotiating with one Foote about buying the note, delivered the note to him under the promise that he would get it discounted, and return the money to defendant, and he took away the note for that purpose. Foote did procure the note to be discounted, but appropriated the avails to his own use.

The court charged that if the jury believed the evidence of the plaintiff in respect to instructing the defendant not to part with the possession of the note, the act of defendant in delivering the note, and allowing Foote to take it away, was a conversion in law, and the plaintiff was entitled to recover. The exception has been criticised as applying to two propositions, one of which was unobjectionable, and therefore not available.

Although not so precise as is desirable, I think that the exception was intended to apply to the proposition above stated, and was sufficient.

The question as to when an agent is liable in trover for conversion is sometimes difficult. The more usual liability of an agent to the principal, is an action of assumpsit or what was formerly termed an action on the case for neglect or misconduct, but there are cases when trover is the proper remedy. Conversion is defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. A constructive conversion takes place when a person does such acts in reference to the goods of another as amount in law to appropriation of the property to himself. Every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of the authority conferred, in case a limited authority has been given, with intent so to apply and dispose of it as to alter its condition or interfere with the owner's dominion, is a conversion. (Bouv. Law Dict., title Conversion.)

Savage, Ch. J., in *Spencer* v. *Blackman* (9 Wend, 167), defines it concisely as follows: "A conversion seems to consist in any tortious act by which the defendant deprives the plaintiff of his goods."

Opinion of the Court, per CHURCH, Ch. J.

In this case the plaintiff placed the note in the hands of the defendant for a special purpose not only, but with restricted authority (as we must assume from the verdict of the jury), not to part with the possession of the note without receiving the money. The delivery to Foote was unauthorized and wrongful, because contrary to the express directions of the owner. The plaintiff was entitled to the absolute dominion over this property as owner. He had the right to part with so much of that dominion as he pleased. He did part with so much of it as would justify the defendant in delivering it for the money in hand, but not otherwise. The act of permitting the note to go out of his possession and beyond his reach was an act which he had no legal right to do. It was an unlawful interference with the plaintiff's property which resulted in loss, and that interference and disposition constituted, within the general principles referred to, a conversion, and the authorities I think sustain this conclusion, by a decided weight of adjudication. A leading case is *Syeds* v. *Hay* (4 T. R., 260), where it was held that trover would lie against the master of a vessel who had landed goods of the plaintiff contrary to the plaintiff's orders, though the plaintiff might have had them by sending for them and paying the wharfage. BUTLER, J., said: "If one man who is intrusted  with the goods of another put them into the hands of a third person, contrary to orders, it is a conversion." This case has been repeatedly cited by the courts of this State as good law, and has never to my knowledge been disapproved, although it has been distinguished from another class of cases upon which the defendant relies, and which will be hereafter noticed. In *Spencer* v. *Blackman* (9 Wend., 167), a watch was delivered to the defendant to have its value appraised by a watchmaker. He put it into the possession of the watchmaker, when it was levied upon by virtue of an execution not against the owner, and it was held to be a conversion. SAVAGE, Ch. J., said: "The watch was intrusted to him for a special purpose, to ascertain its value. He had no orders or leave to deliver it to Johnson, the watchmaker, nor any other person."

So, when one hires a horse to go an agreed distance, and goes beyond that distance, he is liable in trover for a conversion. (*Wheelock* v. *Wheelwright*, 5 Mass., 103.) So, when a factor in Buffalo was directed to sell wheat at a specified price on a particular day, or ship it to New York, and did not sell or ship it that day, but sold it the next day at the price named, held that in legal effect it was a conversion. (*Scott* v. *Rogers*, 31 N. Y., 676; see, also, Addison on Torts, 310, and cases there cited.) The cases most strongly relied upon by the learned counsel for the appellant are *Dufresne* v. *Hutchinson* (3 Taunt, 117) and *Sarjeant* v. *Blunt* (16 J. R., 73), holding that a broker or agent is not liable in trover for selling property at a price below instructions. The distinction in the two classes of cases, I apprehend, is that in the latter the broker or agent did nothing with the property but what he was authorized to do. He had a right to sell and deliver the property. He disobeyed instructions as to price only, and was liable for misconduct, but not for conversion of the property, a distinction which, in a practical sense, may seem technical, but it is founded probably upon the distinction between an unauthorized interference with the property itself, and the avails or terms of sale. At all events, the distinction is fully recognized and settled by authority. In the last case Spencer, J., distinguished it from *Syeds* v. *Hay* (*supra*). He said: "In the case of *Syeds* v. *Hay* (4 Term R., 260), the captain disobeyed his orders in delivering the goods. He had no right to touch them for the purpose of delivering them on that wharf."

The defendant had a right to sell the note, and if he had sold it at a less price than that stipulated, he would not have been liable in this action, but he had no right to deliver the note to Foot to take away, any more than he had to pay his own debt with it. Morally, there might be a difference, but in law both acts would be a conversion, each consisting in exercising an unauthorized dominion over the plaintiff's property. *Palmer* v. *Jarmain* (2 M. & W., 282) is plainly distinguishable. There, the agent was authorized to get the note

discounted, which he did, and appropriated the avails. PARKE, B., said: "The defendant did nothing with the bill which he was not authorized to do." So in *Cairnes* v. *Bleecker* (12 J. R., 300), where an agent was authorized to deliver goods on receiving sufficient security, and delivered the goods on inadequate security, it was held that trover would not lie, for the reason that the question of the sufficiency of the security was a matter of judgment. In *McMorris* v. *Simpson* (21 Wend., 610), BRONSON, J., lays down the general rule that the action of trover "may be maintained when the agent has wrongfully converted the property of his principal to his own use, and the fact of conversion may be made out by showing either a demand and refusal, or that the agent has without necessity sold or otherwise disposed of the property contrary to his instructions. When an agent wrongfully refuses to surrender the goods of his principal, or wholly departs from his authority in disposing of them, he makes the property his own and may be treated as a *tort-feasor.*" The result of the authorities is that if the agent parts with the property, in a way or for a purpose not authorized, he is liable for a conversion, but if he parts with it in accordance with his authority, although at less price, or if he misapplies the avails, or takes inadequate for sufficient security, he is not liable for a conversion of the property, but only in an action on the case for misconduct. It follows that there was no error in the charge. The question of good faith is not involved. A wrongful intent is not an essential element of the conversion. It is sufficient if the owner has been deprived of his property by the act of another assuming an unauthorized dominion and control over it. (31 N. Y., 490.) It is also insisted that the parol evidence of instructions not to part with the note was incompetent to vary the terms of the contract contained in the receipt. This evidence was not objected to not only, but the point was not taken in any manner. The attention of the court was not called to it, and the court made no decision in respect to it. Under these circumstances it must be deemed to have been

waived, and is not available upon appeal. But if an exception had been taken, I am inclined to the opinion that the testimony was competent. It is not claimed that it varies that part of the receipt which contains an agreement to return the note or the money the next day, but that it varies the clause stating that the note was received for negotiation. This expresses the purpose of receiving the note, and if deemed a contract, can it be said that a parol mandate not to part with possession of the note before sale and receipt of money is inconsistent with it?

There is no rule of law which gives an agent the right thus to part with a promissory note under the mere authority to negotiate. The instructions were consistent with the purpose expressed, although if they had not been given, a wider field of inquiry might have been opened. A promissory note passes from hand to hand, and a *bona fide* holder is protected in his title, and it might well be claimed that an authority to sell would not ordinarily justify a delivery to a third person without a sale. Without definitely passing upon this question, we think that the question should have been in some form presented at the trial. In a moral sense the defendant may have acted in good faith, and hence the judgment may operate harshly upon him, but the fact found by the jury renders him liable in this action.

The judgment must be affirmed.

All concur.

Judgment affirmed.