**Commonwealth v. Belton**

*Wendell Freeland,* Assistant District Attorney, and *Allen N. Brunwasser,* for Commonwealth.

*Samuel Rosenzweig,* for defendants.

POWERS, J. (specially presiding), December 3, 1957. —This case concerns the repossession of an automobile by defendants. It is now before the court upon the Commonwealth's motions to take off the demurrer and for a new trial.

Defendants, James T. Belton and Kenneth Gates, were indicted at no. 204, April sessions, 1955, for violation of the Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110, sec. 23(*d*), and at no. 205, April sessions, 1955, on three counts, namely, larceny, receiving a stolen motor vehicle and operating a motor vehicle without the consent of the owner.

All the cases were consolidated and tried together. At the conclusion of the Commonwealth's case-in-chief, defendants demurred to the evidence on all charges. The district attorney joined with defendants in the demurrer to the larceny charges and stated:

"Your Honor, the District Attorney is of the opinion that on the larceny question the Commonwealth has

not been able to sustain the burden showing, among other things, the felonious taking, the animus furandi, as required by the law. It would therefore join in the demurrer on the larceny charge. We object, however, to granting of the demurrer on the Motor Vehicle Financing Act charge as we feel that what has been done in this case comes within the scope of the provisions of that Act and that the failure to give 'immediate written notice of repossession' is a violation of the Motor Vehicle Financing Act and therefore a misdemeanor that comes under the following section of the Act setting forth penalties for violation."

The court sustained the demurrer as to all charges. Thereafter the Commonwealth completely changed its position claiming that it was in error when it joined with defendants in the demurrer on the larceny charges, and now has moved the court to take off the demurrer as to all counts.

For the purpose of deciding upon a demurrer all of the facts which the evidence tends to prove and the inferences reasonably deducted therefrom shall be deemed to be admitted and established as facts: Commonwealth v. Shiroff, 131 Pa. Superior Ct. 565; Commonwealth v. Ernesto, 93 Pa. Superior Ct. 339. Our review of the evidence in the light of this principle has satisfied us that the demurrer was properly sustained.

Larceny is a crime against rightful possession. It is the wrongful taking and carrying away of personal property with an intent to convert the goods wrongfully to the taker's own use or to permanently deprive the owner of his possession: Commonwealth v. Meinhart, 173 Pa. Superior Ct. 495; Commonwealth v. Quinn, 144 Pa. Superior Ct. 400. A bailor of goods may be guilty of larceny when he takes them from a bailee with a felonious intent to deprive the bailee of his rights under the bailment: Commonwealth v. Rose,

74 Pa. Superior Ct. 96; Commonwealth v. Chathams, 50 Pa. 181, 32 Am. Jur. 955.

But an intent to steal property and a bona fide claim of right to take it are wholly incompatible. One who takes property in good faith, under fair color or claim of title, honestly believing that he has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in his belief since in such cases the felonious intent is lacking: Commonwealth v. Meinhart, supra, 32 Am. Jur. 936. However, the requisite felonious intent may be inferred from a wrongful taking and asportation: Commonwealth v. Dingman, 26 Pa. Superior Ct. 615.'

The evidence produced by the Commonwealth in its case-in-chief clearly shows that the automobile in question was the subject of a bailment lease agreement between the Automobile Banking Corporation as lessor, and the private prosecutor, Dario Del Mastro, as lessee. Accordingly, the rights and duties between the parties inter se were as provided by the terms and conditions of the bailment lease agreement.

Sometime prior to February 25, 1955, Del Mastro wanted to transfer the automobile to Anthony Danko, but the proposed transfer did not take place because the Automobile Banking Corporation refused to consent to it. Thereafter Del Mastro gave possession of the automobile to Danko and it was in his possession on February 25, 1955, when it was repossessed by defendants. At this time it was parked on Fernando Street and was not being kept at 1712 Watson Street. It was repossessed under a claim of right derived from the provisions of the bailment lease, namely: First, that the automobile was to be kept only at 1712 Watson Street; second, that it was to remain solely in Del Mastro's possession, and third, an apparent transfer of actual possession to Danko after the Automo-

bile Banking Corporation had refused a specific request for permission to make such a transfer to Danko.

Furthermore, it is apparent that defendants acted only as agents of the Automobile Banking Corporation. They attempted at all times to comply with the requirements of the Motor Vehicle Sales Finance Act, in that Del Mastro was told by defendant, Belton, on the day following the repossession of the automobile, that it would be delivered to him upon payment of the balance due thereon, in that the required written notice of repossession was sent to Del Mastro by defendants and, finally, in that defendants sent Del Mastro the required written notice that the automobile was to be sold on July 1, 1955. Del Mastro had actual knowledge of the repossession and proposed sale of the automobile yet he made no effort to regain possession of it, nor did he object to its sale.

We believe that defendants had a legal right to repossess the automobile on February 25, 1955, because Del Mastro's aforesaid use of it was wholly inconsistent with the bailment lease agreement. ". . . misuser is deemed at common law a conversion of the property. . . . The doctrine proceeds upon the idea not of contract, but of trust; not of an intention on the part of the bailee actually to convert property to his own use, but of his willful disregard of the object or purpose of the trust; not that the misuser . . . is conclusive evidence of the bailee's intention to convert the property to his own use, but rather . . . that such use of the property is so substantial an invasion of the owner's rights and so inconsistent with the idea of existing bailment, that the bailee cannot reasonably object to the bailor's treating the bailment as terminated thereby, or to his proceeding against bailee for a conversion": Scott on Bailments, page 66.

In Wade v. Mason, 12 Gray (Mass.) 335, 74 Am. Dec. 597, it was held that a violation of the terms of

a contract by a bailee, in removing the property from the only place where he was entitled to have it, terminates his right to possession. It is also a conversion "if a person, who is intrusted with the goods of another for a particular purpose, put them into the hands of a third person, contrary to orders. . . . A wrongful intent is not essential": Boldewahn v. Schmidt, 89 Wis. 444, 62 N. W. 177. We hold that defendants' taking of the automobile was not wrongful under the circumstances and therefore the demurrer was properly sustained as to the larceny charges.

In order to prove a prima facie case of receiving a stolen motor vehicle, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the motor vehicle in question was in fact stolen. No such proof appeared in the Commonwealth's case-in-chief and therefore the demurrer to this charge was properly sustained. The demurrer to the third charge of operating a motor vehicle without the consent of the owner was also properly sustained, for in this case the Automobile Banking Corporation was the legal owner under the bailment lease agreement. Any rights which Del Mastro may have had as a legal owner of the automobile were definitely terminated when defendants elected to repossess it by reason of Del Mastro's aforesaid misuse of it.

Defendants are charged also with violation of the Motor Vehicles Sales Finance Act which required defendants to "immediately" furnish Del Mastro with a written notice of repossession delivered in person, or sent by registered mail. Del Mastro admits receiving such a notice on or about March 5, 1955, and the postmark shows that it was mailed on March 4th, seven days after the automobile was repossessed. This notice to Del Mastro met the requirements of the act relative to notice of repossession for it was given within a reasonable time under the circumstances and

Del Mastro cannot claim that he was prejudiced by the delay. Del Mastro testified that on the same day the automobile was taken he learned from the police department that the Automobile Banking Corporation had repossessed it. On the following day he talked with defendant, Belton, who told him that the automobile was repossessed because it was being loaned to an undesirable, and that the automobile would be returned to him upon payment of the balance due amounting to approximately $2,600. He further received other written notices relative to the sale of the automobile on or after July 1, 1955. It thus appears that Del Mastro was completely informed of his rights, duties and obligations and was not in any way taken advantage of.

We think that the legislature intended that the notice of repossession required by the act should be given within a reasonable time under the circumstances in order that the buyer could wholly protect his interest in the repossessed automobile. Appellate courts on numerous occasions have construed almost identical language to mean reasonable notice in view of all the circumstances. Our own Superior Court in Public Coal Company v. Continental Casualty Company, 138 Pa. Superior Ct. 480, stated:

"But the requirement, that notice . . . be given immediately is satisfied if notice is given within a reasonable time under the circumstances of the case."

In Guerra v. State (Texas), 234 S. W. 2d 866, the court said:

"The word 'immediately', whether occurring in contracts or statutes, refers to the act that must be performed within such convenient time as is reasonably requisite, and what is a reasonable time must be determined from the facts of the particular case."

In Stevens Co. v. Frankfort, etc., Insurance Company, 207 Fed. 751, the court similarly stated:

"Where notice of an act is required to be given 'immediately', the word implies reasonable notice in view of all circumstances of the case." (Syllabus.)

Generally, what is reasonable is to be determined by the jury. However, when the facts of the case are undisputed and notice is given in such time and under such circumstances that there is no room for fair and sensible men to differ in their conclusions, then it is for the court to decide. The demurrer to the charges under the Motor Vehicle Sales Finance Act was properly sustained.

In the light of the authorities cited herein and the evidence produced by the Commonwealth in its case-in-chief, it is apparent that we must deny the Commonwealth's motion to take off the demurrer and for a new trial.